UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                                    (For Online Publication Only)
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                               Plaintiff,        **MEMORANDUM & ORDER**
                                                                 21-cr-00538 (JMA) (ARL)

                    -against-                                    **FILED**
                                                                 **CLERK**
SHAKON COFFEY,
                                                                 11:22 am, Dec 26, 2023

                                               Defendant.        **U.S. DISTRICT COURT**
-------------------------------------------------------------------X  **EASTERN DISTRICT OF NEW YORK**
                                                                 **LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

On August 3, 2021, Magistrate Judge Steven I. Locke signed an arrest warrant for Defendant Shakon Coffey ("Coffey") based on a Complaint alleging that he—together with others—attempted to distribute and possessed with intent to distribute around 4 kilograms of cocaine.  (See ECF No. 1; see also 21-MJ-00893, ECF No. 12.)  On September 22, 2021, Coffey was arrested and arraigned on the Complaint.  (See ECF No. 5.)  On October 19, 2021, a federal grand jury returned an indictment charging Coffey with attempted distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(b)(1)(B)(ii)(II), 846 and 18 U.S.C. §§ 2, 3551 et seq. (Count One), and with distribution and possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. §§ 2, 3551 et seq. (Count Two).  (See ECF No. 12.)

Coffey later moved to suppress the evidence against him.  (See Def.'s Mem., ECF No. 43.) Specifically, Coffey seeks the suppression of evidence derived from (i) the search of 41 Sebonac Road, Southampton, New York, 11968 ("41 Sebonac Road"); and from (ii) two later searches of various electronic devices seized from 41 Sebonac Road.  (See id.)  Coffey contends the evidence should be suppressed because it was obtained in violation of the Fourth Amendment.  (See id.; see also Def.'s Rep. Mem., ECF No. 59.)  The Court disagrees.

For the reasons below, Coffey's motion is DENIED in its entirety, without need for a hearing.

## I.     BACKGROUND

**A.     <u>Facts</u>**.

The facts below come from three affidavits.  Each affidavit was filed in support of a separate search warrant by James P. Flynn, a United States Department of Homeland Security, Homeland Security Investigations ("HSI") Special Agent ("Special Agent Flynn").  They include: (i) Special Agent Flynn's June 21, 2021, Affidavit in Support of his Application for a Search Warrant of 41 Sebonac Road, (Def.'s Mem., Ex. A, ECF No. 43-1); (ii) Special Agent Flynn's June 29, 2021, Affidavit in Support of his Application for a Search Warrant of the Cellular Phones Seized from 41 Sebonac Road, (Def.'s Mem., Ex. C, ECF No. 43-3); and (iii) Special Agent Flynn's July 13, 2021, Affidavit in Support of his Application for a Search Warrant of All the Electronic Devices Seized from 41 Sebonac Road, (Def.'s Mem., Ex. E, ECF No. 43-5).

### 1.     June 21, 2021, Warrant Application to Search 41 Sebonac Road.

On June 21, 2021, Special Agent Flynn applied for an anticipatory warrant to search a home located at 41 Sebonac Road in Southampton, New York.  His supporting affidavit described the premises to be searched, the various evidence he expected to seize, the triggering conditions for the execution of the anticipatory search warrant, and the stated facts on which Magistrate Judge Anne Y. Shields could determine whether probable cause to search existed.

According to the supporting affidavit, on June 18, 2021, a United Parcel Service ("UPS") Security Officer—at the John F. Kennedy International Airport UPS facility—intercepted a package shipped from a UPS Store in Corona, California via next day air delivery.  The package was a brown cardboard box addressed to Jasmine Coffey at 41 Sebonac Road, Southampton, New York 11968.  The UPS Security Officer opened the package and discovered a second cardboard

box.  Within the second cardboard box, the UPS Security Officer discovered an igloo cooler bag. The UPS Security Officer opened the igloo cooler bag and observed four brick-shaped objects that were sealed in clear vacuum packaging.  The UPS Security Officer then alerted HSI Task Force Officer James Trudden ("TFO Trudden") about the package.  At around 9:30 A.M., TFO Trudden took possession of the package and transported it to HSI's JFK office for a canine inspection and a drug field test.

A few hours later, a United States Customs and Border Protection ("CBP") Officer—who was a certified narcotics detection canine handler—opened the package and exposed its contents to his trained canine for inspection and review.  The canine reacted by sitting near the parcel.  The CBP Officer informed TFO Trudden that the canine's reaction of sitting near the parcel conveyed a positive alert for the presence of controlled substances.  TFO Trudden conducted two field-tests on one of the brick shaped objects within the package.  Both field tests conveyed positive results for the presence of cocaine.  The package contained around 4.7 kilograms of cocaine in total, which Special Agent Flynn represented is an amount consistent with distribution.  Further, Special Agent Flynn estimated that the approximate 4.7 kilograms of cocaine had a conservative street market value of $235,000.

According to the affidavit, the address on the shipping label—41 Sebonac Road, Southampton, New York 11968—is an address long associated with Shakon Coffey, a known narcotics trafficker.  Shakon Coffey—who is related Jasmine Coffey, the package's intended recipient—has reported 41 Sebonac Road as his home address in numerous previous arrests.[1]

- In 2005, Coffey pled guilty in Suffolk County Court to criminal possession of a narcotic drug in the fourth degree—a class C felony—

---

[1]     HSI's Enforcement Operation Plan—dated on day before HSI Special Agent Flynn applied for the anticipatory search warrant—listed two different addresses for Jasmine Coffey: (i) 38 Coventry Court, Ridge, New York; and (ii) 41 Sebonac Road, Southampton, New York.  (See Def.'s Mem., Ex. F, ECF No. 43-6.)  The Plan did not indicate which address was Jasmine Coffey's current address.

in violation of New York Penal Law Section 220.09(1) and was sentenced to 4 months' imprisonment.  At the time of his arrest, Coffey listed the 41 Sebonac Road as his home address.

- In 2007, Coffey pled guilty in Suffolk County Court to attempted criminal possession of a narcotic drug in the fourth degree—a class D felony—in violation of New York Penal Law Sections 110 and 220.09(1) and was sentenced to 18 months' imprisonment.  At the time of his arrest, Coffey listed 41 Sebonac Road as his home address.

- In 2014, Coffey was convicted in the Eastern District of New York for conspiring to distribute narcotics in violation of 21 U.S.C. §§ 846 and 841 and was sentenced to 21 months' imprisonment and 36 months' supervised release.  Coffey again listed 41 Sebonac Road as his home address, this time to the United States Probation Department during his 36 months on supervised release.

The affidavit also identified Javon Coffey as a relative of Jasmine Coffey.  Although Javon Coffey has not listed 41 Sebonac Road as his home address, the affidavit indicated that he has used addresses in Suffolk County, New York during his several arrests and convictions for various narcotics trafficking and possession offenses.

Based on the above information, Special Agent Flynn sought an anticipatory warrant to search 41 Sebonac Road for evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841 and 846.  Execution of the warrant would depend on fulfillment of the following triggering conditions:

- Law enforcement agents making a controlled delivery of the package (without the cocaine) to 41 Sebonac Road by knocking on the door.

- Once an individual at 41 Sebonac Road accepted delivery of the package, law enforcement would monitor whether the package had been opened using a trip device.  Once law enforcement agents determined that the package had been opened, or if thirty minutes elapsed after the package first entered 41 Sebonac Road (in case of a trip device malfunction within the package), whichever is sooner, law enforcement agents or officers would promptly execute the search warrant of the premises.

4

Finally, the affidavit described what Special Agent Flynn—based on his 14-years of experience and training—expected to find during the execution of the anticipatory search warrant: (i) quantities of cocaine and other controlled substances; (ii) books and records related to narcotics trafficking; (iii) currency used to purchase controlled substances (proceeds); (iv) drug paraphernalia (glassine bags, capsules, scales, stamps, packaging material, vacuum sealers, and cutting agents); and (v) electronic devices, including cellular telephones, tablets, and computers.[2]

On June 21, 2021, Magistrate Judge Anne Y. Shields granted the anticipatory search warrant for 41 Sebonac Road, authorizing the search and seizure of "evidence, fruits[,] and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 . . . , including, but not limited to, the following:

1. quantities of cocaine and other controlled substances ('Controlled Substances');

2. books and records including the names, addresses and telephone numbers of narcotics purchasers and suppliers, which books and records would reveal the identities of confederates in narcotics trafficking;

3. books and records reflecting the delivery of shipments of, as well as sale of, or payment for Controlled Substances, including, but not limited to, receipts, invoices, or wire transfer service records;

4. currency used to purchase Controlled Substances or which reflects the proceeds of sales of Controlled Substances;

5. drug paraphernalia including glassine bags, capsules, scales, stamps, packaging material, vacuum sealers and cutting agents; and

6. electronic devices, including cellular telephones, tablets, and computers."

(Def.'s Mem., Ex. A, ECF No. 43-1.)

---

[2]     The affidavit sought authorization only to seize electronic devices found inside 41 Sebonac Road; it did not seek authorization to search any such devices.

5

2.      **June 21, 2021, Controlled Delivery.**

Later that day, law enforcement officers executed a controlled delivery of the package as expressly delineated in the affidavit.  Before searching the home, law enforcement observed Shakon Coffey enter 41 Sebonac Road.  At around 4:50 P.M., a law enforcement officer working in an undercover capacity delivered the package (without the cocaine) to 41 Sebonac Road, where it was received by a woman who was later identified as Coffey's grandmother.  Around five minutes after the package was delivered, law enforcement observed Coffey leave the residence without the package.  The anticipatory search warrant authorized law enforcement to search 41 Sebonac Road either after the trip sensor enclosed in the package was triggered, or thirty minutes after the package was delivered, whichever occurred earlier.  Less than 30 minutes later, the trip was triggered at around 5:12 P.M., and law enforcement began to search 41 Sebonac Road at around 5:15 P.M.

The woman who accepted delivery of the package was the only person inside 41 Sebonac Road at the time of the search.  The woman identified herself to law enforcement as Coffey's grandmother and advised them that Coffey lived in the basement of 41 Sebonac Road.  She also stated that Coffey had access to—and permission to use—the entire residence.  Coffey's grandmother further advised that she and Coffey were the only individuals who lived at 41 Sebonac Road at the time of the search, and that Jasmine Coffey—the addressee listed on the shipping label of the package—did not live there.

Law enforcement recovered the following items from the basement of 41 Sebonac Road:

- $32,900 in U.S. currency;

- Drug distribution paraphernalia consisting of scales, cutting agents, and packaging material;

- Two kilo presses used to form powder cocaine into brick-shaped objects similar to the four found inside the package intercepted at JFK airport;

- Various drugs in the following approximate amounts:

    o   91 grams of cocaine

    o   838 grams of MDMA

    o   364 grams of alprazolam

    o   39 grams of oxycodone

    o   11 grams of ecstasy

    o   179 grams of marijuana

    o   5,261 grams of marijuana edibles

    o   3,787 grams of an unknown powder

- Two laptops;

- A cryptocurrency wallet; and

- Two black colored Apple iPhones; one black colored Verizon ZTE cell phone; and one silver and white colored Apple iPhone (collectively, "the Cellular Phones").

**3.    June 29, 2021, Warrant Application to Search the Cellular Phones (Electronic Devices 1–4).**

On June 29, 2021, Special Agent Flynn applied for a warrant to search the seized Cellular Phones.  The application sought permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the Cellular Phones were used, the purpose of their use, who used them, and when.  Special Agent Flynn alleged that there was probable cause to believe that this forensic electronic evidence might be on the Cellular Phones.

Later that day, Magistrate Judge Shields signed the warrant to search the Cellular Phones for all records that relate to Shakon Coffey's violations of 21 U.S.C. §§ 841 and 846, including:

- Evidence of packages being tracked or monitored;

- Lists of customers, suppliers and related identifying information;

- Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

- Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

- Any information recording Coffey's schedule or travel from June 1, 2021, to June 29, 2021; and

- All bank records, checks, credit card bills, account information, and other financial records.

(See Def.'s Mem., Ex. C, ECF No. 43-3.)

**4.    July 13, 2021, Warrant Application to Search All Electronic Devices (Electronic Devices 1–7).**

On July 13, 2021, Special Agent Flynn applied for a warrant to conduct a broader search of the Cellular Phones (Devices 1–4) and to search the two laptops and the cryptocurrency wallet (Devices 5–7) (collectively, the "Electronic Devices").  In that application, Special Agent Flynn alleged that there was probable cause to believe that Shakon Coffey and others had violated 21 U.S.C. §§ 841 and 846 (controlled substances trafficking, possession with intent to distribute controlled substances, and conspiracy to distribute and possess with intent to distribute controlled substances) and 31 U.S.C. § 5324 (illegally structuring financial transactions to evade reporting requirements).

According to the supporting affidavit, execution of the June 29, 2021, search warrant established that Coffey used the Cellular Phones and demonstrated further probable cause to believe that he used them to commit the subject crimes.

For example, one Cellular Phone revealed the following:

- Two calendar notes from June 18, 2021: (i) one listing Delta Flight 2724 from John Wayne Airport in Santa Ana, California to Salt Lake City International Airport in Salt Lake City, Utah; and (ii) another listing Delta Flight 1463 from Salt Lake City International Airport to JFK.

8

- The affidavit alleges that flight records show Coffey boarded each of those flights on or about June 18, 2021—one day after the package containing 4.7 kilograms of cocaine arrived at JFK.

- A calendar note from June 15, 2021, listing American Airlines Flight 255 from JFK to Los Angeles International Airport.  The affidavit alleges that flight records also demonstrate that Coffey boarded this flight.

- A photo screenshot from June 17, 2021, of the business name "Performance Online, Inc.," with the phone number (951) 284-4400. This information was used as the shipper's name and phone number for the UPS package sent from Corona, California to 41 Sebonac Road on June 17, 2021.

- A June 16, 2021–June 18, 2021, text message conversation believed to be between Coffey and another individual ("JC") regarding the negotiation and purchase of 4 kilograms of cocaine in California.

Further connecting Coffey to Corona, California was:

- Surveillance video obtained from a UPS Store in Corona, California—from which the package was shipped—showing a person matching Coffey's description approaching the counter and shipping a package that matches the description of the package containing the approximately 4.7 kilograms of cocaine.  In particular, the surveillance video depicts the shipper of the package wearing a distinctive camouflage bucket-style hat, which appears identical to a hat photographed in the basement of 41 Sebonac Road—the area of that premises where Coffey's grandmother stated that he resided—during the execution of the 41 Sebonac Road search warrant on June 21, 2021.

- Records obtained from Bank America, which purportedly provided probable cause to believe that Coffey engaged in illegally structuring financial transactions to evade reporting requirements.  For example, the affidavit detailed eight transactions—all of which were under the $10,000 threshold for reporting financial transactions—between May 4, 2020, and May 11, 2020.  Seven of those transactions occurred in Corona, California.  In addition, between April 27, 2020, and May 1, 2020, withdrawals of $28,000 were made from Coffey's Bank of America accounts at branches in Riverhead and Southampton, New York, in amounts that were all under the $10,000 reporting threshold.

(See Def.'s Mem., Ex. E, ECF No. 43-5.)

B.    **Procedural History**.

On August 3, 2021, Magistrate Judge Locke signed an arrest warrant for Shakon Coffey based on HSI's Complaint alleging that he—together with others—attempted to distribute and possessed with intent to distribute around 4 kilograms of cocaine.  (See ECF No. 1; see also 21-MJ-00893, ECF No. 12.)   On September 22, 2021, Coffey was arrested and arraigned on the Complaint.  (See ECF No. 5.)  On October 19, 2021, a federal grand jury returned an indictment charging Coffey with attempted distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(b)(1)(B)(ii)(II), 846 and 18 U.S.C. §§ 2, 3551 et seq. (Count One), and with distribution and possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. §§ 2, 3551 et seq. (Count Two).  (See ECF No. 12.)

Later, on March 24, 2023, Coffey moved to suppress evidence against him.  (See Def.'s Mem., ECF No. 43.)  The Government filed its memorandum in opposition on May 15, 2023.  (See Gov't Opp'n, ECF No. 47.)  Coffey filed a reply on September 29, 2023.  (See Def.'s Reply, ECF No. 59.)   On December 6, 2023, the Court directed the Government to respond to Coffey's argument—raised for the first time in his Reply Brief—that the anticipatory search warrant's provision permitting seizure of all electronic devices in 41 Sebonac Road was unconstitutionally overbroad.  (See December 6, 2023, Order to Show Cause.)  The Government filed a response on December 14, 2023.  (See Gov't OTSC Reply, ECF No. 63.)

## II.    DISCUSSION

Coffey seeks suppression of evidence derived from (i) the search of 41 Sebonac Road; and (ii) the later searches of the seven Electronic Devices seized from 41 Sebonac Road.  (See Def.'s Mem., ECF No. 43.)  Coffey contends the evidence should be suppressed because it was obtained in violation of the Fourth Amendment.  (See id.; see also Def.'s Rep. Mem., ECF No. 59.)

Specifically, Coffey argues that the anticipatory warrant to search 41 Sebonac Road was (i) unsupported by probable cause; and (ii) unconstitutionally overbroad.  (See id. at 13–23; see also Def.'s Rep. Mem. at 4–6, ECF No. 59.)  Coffey also argues that developments after the warrant's issuance—but before its execution—required law enforcement to return to Magistrate Judge Shields to redetermine whether probable cause existed.  (See id. at 21–22.)  Thus, to Coffey's mind, the evidence seized from 41 Sebonac Road and the Electronic Devices is subject to exclusion because it constitutes poisonous fruit of Fourth Amendment violation.  (See id. at 23.)  Coffey also seeks a hearing on several issues raised.  (See id. at 24.)

The Government, on the other hand, argues that Magistrate Judge Shields authorized the anticipatory search warrant in compliance with the Fourth Amendment's requirements.  (See Gov't Opp'n at 5, ECF No. 47.)  Even if the anticipatory warrant were invalid, the Government argues in the alternative that suppression is unwarranted given law enforcement's good faith reliance on the warrant.  (See id. at 9–10.)

For the reasons below, Coffey's suppression motion is DENIED in its entirety, without need for a hearing.

**A.**     **Motion to Suppress Evidence**.

      **1.  Applicable Law.**

            **a)     Probable Cause.**

The Fourth Amendment prohibits "unreasonable searches and seizures," and requires that "no warrants shall issue, but upon probable cause, supported by Oath."  U.S. CONST. amend. IV. The Supreme Court has explained that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."  Illinois v. Gates, 462 U.S. 213, 232 (1983).  In making a probable cause determination, the task of an issuing magistrate is "simply to make a practical, common-sense

11

decision whether, given all the circumstances set forth in the affidavit before him [or her], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238 (internal citation omitted).

"A magistrate's determination of probable cause should be paid great deference by reviewing courts." Id. at 236 (internal quotations and citation omitted). This Court's "task" is, therefore, "simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." United States v. Clark, 638 F.3d 89, 93 (2d Cir. 2011) (quoting Gates, 462 U.S. at 238). The deference owed to an issuing magistrate's determination does not, of course, preclude this Court from "properly conclud[ing] that . . . [a] warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances." United States v. Leon, 468 U.S. 897, 915 (1984) (citing Gates, 462 U.S. at 238–39).

### b)   Anticipatory Search Warrants.

Here, Magistrate Judge Shields issued an "anticipatory" search warrant for 41 Sebonac Road, based on Special Agent Flynn's June 21, 2021, affidavit.

An anticipatory warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." United States v. Grubbs, 547 U.S. 90, 94 (2006) (citation omitted). Like the search warrant here, anticipatory warrants generally "subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.'"[3] Id. Thus, "when an

---

[3]      Here, the supporting affidavit supplied by Special Agent Flynn stated clear and precise triggering conditions for the execution of the anticipatory search warrant:

> "Law enforcement agents are authorized to execute the search warrant pursuant to the following procedures: Within the time period authorized by the Court, law enforcement agents will make a controlled delivery of the SUBJECT PACKAGE

anticipatory warrant is issued, 'the fact that the contraband is not presently located at the place described in the warrant is immaterial, so long as there is probable cause to believe that it will be there when the search warrant is executed.'" Id. at 96 (quoting United States v. Garcia, 882 F.2d 699, 702 (2d Cir. 1989)).

Anticipatory search warrants are therefore no different—in principle—from ordinary search warrants. See id. An anticipatory warrant may issue if the magistrate "determine[s] (1) that it is now probable that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed." Id. (emphasis in original).

For an anticipatory warrant to comply with the Fourth Amendment's probable cause requirement, two prerequisites of probability must be satisfied.   First, "it must be true . . . that if the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. at 96–97 (quoting Gates, 462 U.S. at 238) (emphasis in original).   Second, there also must be "probable cause to believe the triggering condition will occur." Id. at 97 (emphasis in original).   The supporting affidavit must therefore "provide the

_____

to the SUBJECT PREMISES by knocking on the door of the SUBJECT PREMISES. Once an individual at the SUBJECT PREMISES accepts delivery of the SUBJECT PACKAGE, law enforcement will monitor whether the SUBJECT PACKAGE has been opened using the trip device. Once law enforcement agents determine that the SUBJECT PACKAGE has been opened, or if thirty minutes elapses after the SUBJECT PACKAGE first enters the SUBJECT PREMISES, whichever is sooner, law enforcement agents or officers will promptly execute the search warrant of the SUBJECT PREMISES."

(Def.'s Mem., Ex. A, Attachment A, ECF No. 43-1 (emphasis added).)

Importantly, Coffey does not dispute the triggering conditions occurred when law enforcement officers executed a controlled delivery of the package. Indeed, "law enforcement officers observed [Coffey] enter 41 Sebonac Road." (Def.'s Mem., Ex. C at 5, ECF No. 43-3.) Then, "an individual at the SUBJECT PREMISES"—Coffey's grandmother—"accept[ed] delivery of the SUBJECT PACKAGE," albeit without the cocaine. (Def.'s Mem., Ex. A, Attachment A, ECF No. 43-1; see also Def.'s Mem., Ex. C at 5, ECF No. 43-3.) At that point, "law enforcement [began to monitor] whether the SUBJECT PACKAGE ha[d] been opened using the trip device." (Id.) Finally, the "trip was triggered" within 30 minutes after the package was delivered. (Def.'s Mem., Ex. C at 6, ECF No. 43-3.)

magistrate with sufficient information to evaluate both aspects of the probable-cause determination." Id. (citing Garcia, 882 F.2d at 703).

### 2.    Analysis.

#### a)    Probable Cause Existed Upon Satisfaction of the Triggering Conditions.

Special Agent Flynn's June 21, 2021 supporting affidavit provided a sufficient basis for Judge Shields to conclude that satisfaction of the triggering conditions would supply probable cause for the search.  See Grubbs, 547 U.S. at 97 ("In this case, the occurrence of the triggering condition—successful delivery of the videotape to Grubbs' residence—would plainly establish probable cause for the search.").

Indeed, the affidavit provided specific and undisputed factual allegations supporting the inference that there was a "fair probability that contraband or evidence of a crime [would] be found" at 41 Sebonac Road.  Id. at 96.  First, Special Agent Flynn's affidavit states that a UPS package containing multiple kilograms of cocaine—worth hundreds of thousands of dollars—was sent from California to a private residence long associated with Coffey, a convicted felony narcotics trafficker.  (See Def.'s Mem., Ex. A at 3–8, ECF No. 43-1.)  Second, the affidavit indicates that Coffey is related to the package's alleged intended recipient (Jasmine Coffey), see id. at 7, and that another one of her relatives—Javon Coffey—has "used addresses in Suffolk County, New York during his numerous arrests and convictions for various narcotics trafficking and possession offenses," id. at 7–8.  Third, Special Agent Flynn explained that—based on his "experience and training as a law enforcement officer"—the amount of narcotics recovered from the package (as well as how it was packaged) was "consistent with distribution."  (Def.'s Mem., Ex. A at 10, ECF No. 43-1.)  Fourth, Special Agent Flynn detailed items "indicative of narcotics trafficking" that he expected to find, along with the bases for his beliefs.  (Id. at 10–12.)  From this information, Judge Shields could infer that evidence, fruits, and instrumentalities of narcotics

trafficking would be found within 41 Sebonac Road upon satisfaction of the triggering conditions.[4] Her "determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (citation omitted).

Coffey advances several bases that, in his mind, undermine Judge Shield's probable cause determination. Each argument is unconvincing.

First, Coffey argues that the supporting affidavit "did not actually identify anyone in particular as using the Residence for drug trafficking." (Def.'s Mem. at 16, ECF No. 43.) But that's not required under long-standing Supreme Court precedent, as Coffey then concedes. (See id. at 16 n.15 (citing Zurcher v. Stanford Daily, 436 U.S. 547, 560 (1978) (holding that the Fourth Amendment does not prevent a state from issuing a warrant "to search for evidence simply because the owner or possessor of the place to be searched is not . . . reasonably suspected of criminal involvement")).)

Second, Coffey argues probable cause was lacking because the supporting affidavit "did not offer any evidence of who was currently living in the Residence." (Def.'s Mem. at 16, ECF No. 43.) Once again, Coffey asks law enforcement to take steps that are not required by law. Regardless, the affidavit not affirmatively stating who lived at 41 Sebonac Road does not defeat the fact that Judge Shields—for the reasons stated above—could decide that probable cause existed upon completion of the triggering conditions. Beyond that, Coffey contends that the information about his association with 41 Sebonac Road was "stale" because the address information obtained from the U.S. Probation Department could not have been more recent than December 2017—3.5 years before Special Agent Flynn used it in the supporting affidavit. (Def.'s Mem. at 17, ECF No. 43.) This staleness argument, too, is irrelevant to Judge Shield's probable cause determination.

---

[4]    Put differently, Judge Shields could easily determine that probable cause would exist upon the delivery, acceptance, and opening of a cross-country shipment—thought to contain multiple kilograms of cocaine—that was addressed to a residence long used by a convicted narcotics trafficker.

The expressly delineated triggering condition authorized by Judge Shields did not hinge on information about Coffey's association with 41 Sebonac Road.[5]  (See Def.'s Mem., Ex. A, Attachment A, ECF No. 43-1.)

Coffey's third argument—that the affidavit did not allege "independent evidence that the residence was being used as a stash house"—fails for similar reasons as his first two, insofar as it requires law enforcement to take steps that are not required by law.  (Def.'s Mem. at 18, ECF No. 43.)  Coffey cites no binding authority that necessitates law enforcement to prove the subject premises was used as a stash house.  In fact, Second Circuit case law does not so require.  See, e.g., United States v. Becerra, 97 F.3d 669, 670–71 (2d Cir. 1996) (affirming the validity of an anticipatory search warrant where law enforcement made "a controlled delivery of a substitute parcel" (i.e., package without cocaine) to an "apartment" not alleged to be a stash house).  As a result, Coffey selling narcotics out of 41 Sebonac Road is not a sine qua non of Judge Shield's probable cause determination.

Fourth, Coffey argues that removing the cocaine from the package before its delivery vitiates probable cause to search 41 Sebonac Road.  (See Def.'s Mem. at 18, ECF No. 43.)  But that assertion is contrary to what the Second Circuit approved in Becerra.  See Becerra, 97 F.3d at 671 ("[T]he fact that a package containing cocaine is sent to a particular address and it, or a

---

[5]      Coffey's cites the Second Circuit's decision in United States v. Raymonda for the proposition that a court "may conclude that a warrant lacks probable cause where the evidence supporting it is not 'sufficiently close in time to the issuance of the warrant' that 'probable cause can be said to exist as of the time of the search'—that is, where the facts supporting criminal activity have grown stale by the time that the warrant issues." 780 F.3d 105, 114 (2d Cir. 2015) (quoting United States v. Wagner, 939 F.2d 69, 75 (2d Cir. 1993)).  This citation—while correct—is inapposite in the anticipatory search warrant context.  The law recognizes "no bright-line rule for staleness," Walczyk v. Rio, 496 F.3d 139, 162 (2d Cir. 2007), which must instead be evaluated "on the basis of the facts of each case," United States v. Martino, 664 F.2d 860, 867 (2d Cir. 1981).  In an anticipatory search warrant case like this one, a challenge based on staleness hinges on whether the probable cause determination grew stale after the issuance of the warrant.  See Grubbs, 547 U.S. at 95 n.2 ("[T]he probable-cause showing may have grown 'stale' in view of the time that has passed since the warrant was issued.").  Here, it is undisputed that there was no delay in the warrant's execution once the triggering conditions were satisfied.

16

substitute, is accepted at that address, establishes probable cause to search those premises.").  And Coffey acknowledges this fact.[6]  (See Def.'s Mem. at 18, ECF No. 43 ("Indeed, the Second Circuit indicated that controlled delivery of a 'substitute' package—rather than the original one—was acceptable.").)

Fifth, Coffey argues that delivery to a non-suspect—here, Coffey's grandmother—cuts against Judge Shield's probable cause determination.[7]  (See Def.'s Mem. at 19, ECF No. 43.)  But Coffey misapprehends the applicable law.  Whether his grandmother was a suspect at the time of the delivery is irrelevant.  The expressly delineated triggering condition authorized by Judge Shields hinged on delivery to "an individual at the SUBJECT PREMISES"—not a particular suspect.  (Def.'s Mem., Ex. A, Attachment A, ECF No. 43-1.)  And it is undisputed those triggering conditions were satisfied.  Put differently, Coffey argues against a probable cause determination based on factors not required by the Supreme Court in Grubbs.

Sixth, and finally, Coffey argues the probable cause determination is undercut by the undisputed fact that he left 41 Sebonac Road before the trip sensor alerted law enforcement to the package's opening.  See Def.'s Mem. at 20, ECF No. 43.  The problem with Coffey's argument is

---

[6]     To get around the issue, Coffey first argues that Becerra is inapplicable because it predates the Supreme Court's decision in Grubbs.  (See Def.'s Mem. at 18, ECF No. 43.)  This argument is unconvincing.  Becerra is still good law, as "[i]t is a longstanding rule that" this Court "is bound by the decisions of prior [Second Circuit] panels until such times as they are overruled either by an en banc panel of [the] Court or by the Supreme Court."  United States v. Peguero, 34 F.4th 143, 158 (2d Cir. 2022) (internal quotation marks omitted).  Next, Coffey argues that Becerra is distinguishable because there—unlike this case—law enforcement "made a controlled delivery directly to the suspect."  (Def.'s Mem. at 19, ECF No. 43.)  This distinction is irrelevant because—as explained below—the expressly delineated triggering condition authorized by Judge Shields was predicated on delivery to "an individual at the SUBJECT PREMISES"— not a particular suspect.  (Def.'s Mem., Ex. A, Attachment A, ECF No. 43-1.)

[7]     The Government contends that Coffey's "grandmother was just as viable of a subject as her grandson inasmuch as she accepted the package at the designated residence where the kilograms of cocaine were shipped. Only after executing the anticipatory search warrant and speaking to her did HSI confirm that she was not suspected of being involved in her grandson's [alleged] drug trafficking scheme."  (Gov't Opp'n at 8 n.7, ECF No. 47.)

that it is—again—irrelevant to the probable cause determination.  No matter who opened the package,[8] the explicit conditions of the anticipatory search warrant were met.  Indeed, the "trip was triggered" within 30 minutes after the package was delivered to "an individual at the SUBJECT PREMISES." (Def.'s Mem., Ex. C at 6, ECF No. 43-3; Def.'s Mem., Ex. A, Attachment A, ECF No. 43-1.)  For those reasons, HSI executed the warrant as authorized.

Coffey advances two separate arguments to challenge the anticipatory search warrant's validity.  Neither one has merit.

First, Coffey argues that factual developments arising after the warrant's issuance—but before its execution—required law enforcement to return to Judge Shields to redetermine whether probable cause existed.  (See Def.'s Mem. at 21–22, ECF No. 43.)  Coffey's argument is incorrect. "The duty to report new or correcting information to the magistrate does not arise unless the information is material to the magistrate's determination of probable cause."  United States v. Marin-Buitrago, 734 F.2d 889, 894 (2d Cir. 1984).  Here, the fact that Coffey exited the premises after the controlled delivery—but before the trip sensor alerted HSI that the package was opened— is immaterial to Judge Shield's probable cause determination.  The triggering conditions of the anticipatory search warrant did not hinge on Coffey's presence at 41 Sebonac Road when the trip sensor went off.

Second, Coffey contends—for the first time in his Reply Brief—that "the provision to seize all electronic devices in the home was unconstitutionally overbroad." (Def.'s Rep. Mem. at 4, ECF No. 59.)

Coffey's argument strikes two immediate roadblocks.  First, Coffey waived his overbreadth argument because he raised it for the first time in his Reply.  See, e.g., United States v. Yousef, 327

---

[8]      Of note, Coffey has not submitted an affidavit expressly stating that he was not the person who opened the package.

F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief."); United States v. Greer, 285 F.3d 158, 170 n.3 (2d Cir. 2002) (argument raised for first time in reply brief is waived); Clubside, Inc. v. Valentin, 468 F.3d 144, 159 n.5 (2d Cir. 2006) (holding that a court should not "consider arguments that are raised for the first time in a reply brief"). Second, Coffey lacks standing to assert Fourth Amendment rights in the electronic devices; he has not submitted an affidavit establishing that those electronic devices belonged to him or that he had a subjective expectation of privacy in them.  See United States v. Ruggiero, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), aff'd sub nom. United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995); see also United States v. Dore, 586 F. App'x 42, 46 (2d Cir. 2014); cf. United States v. Armedo–Sarmiento, 545 F.2d 785, 796 (2d Cir. 1976).  Still, even if the issue were properly before the Court, and even if Coffey had standing to challenge the seizure of the electronic devices, his argument would lack merit.

Relying mainly on United States v. Griffith, 867 F.3d 1265, 1276 (D.C. Cir. 2017), Coffey argues the anticipatory search warrant was overbroad because it authorized the seizure of "all electronic devices" located at 41 Sebonac Road, regardless of ownership.  (See Def.'s Rep. Mem. at 4, ECF No. 59.)  But Griffith is inapt.  The situation there was wholly different; it involved neither suspected narcotics trafficking nor an anticipatory search warrant.[9]  In that case, the defendant ("Griffith") was suspected of a year-old gang-related murder.  See id. at 1268. Following the murder, he was incarcerated for another crime for a year.  See id. at 1269.  When he was released, officers sought a warrant to search his house and seize, among other things, all

---

[9]  The other case Coffey cites in his Reply Brief similarly did not involve suspected narcotics trafficking.  See In the Matter of the Search of a Residence in Oakland, California, 354 F. Supp. 3d 1010, 1010, 1014 (N.D. Cal. 2019) (investigating two individuals believed to be involved in extortion and holding that "the Government's request to search and seize all digital devices at the Subject Premises is . . . overbroad").  As with Griffith, Oakland also is not on point.

electronics found there, including his cell phone.  See id.  The affidavit did not contain any information establishing a nexus between the murder and any electronics, let alone that Griffith even had a cell phone.  See id. at 1272–73.  The connection between the hypothetical phone and the crime (the year-old murder) was merely that most people own cell phones, most cell phones capture what their users do, Griffith is a person, we think he's a criminal, so we think there exists a cell phone that captured evidence of a crime.  See id. at 1278.  The allegation that supposedly provided probable cause to search Griffith's home for evidence at all was that he had a hypothetical cell phone that contained hypothetical evidence.

As a result, the D.C. Circuit reversed the district court's denial of Griffith's suppression motion.  The court held that a warrant "authoriz[ing] the wholesale seizure of all electronic devices discovered in the apartment [where the defendant resided], including items owned by third parties" was overbroad in its reach because it allowed seizure of "devices plainly unrelated to the crime."[10] Id. at 1270–71, 1277.

Here, by contrast, the electronic devices were not plainly unrelated to the alleged crimes. The role of electronic devices to narcotics trafficking is apparent throughout Special Agent Flynn's affidavit.  For example, the affidavit explains that Special Agent Flynn "personally participated in the execution of search warrants and in numerous controlled deliveries of narcotics" where he "frequently found" evidence of narcotics trafficking, "such as cell phones, tablets, and computers." (Def.'s Mem., Ex. A at 10, ECF No. 43-1.)  Special Agent Flynn also attests that—"based on [his] experience and training"—the nature of narcotics trafficking necessarily would involve those

---

[10]     The overbreadth of the warrant was especially striking in that case because it allowed the seizure and search of all electronic devices, and it was unlikely that Griffith's current phone would have contained incriminating evidence for a crime that had occurred over a year earlier.  See id. at 1278–79.  In other words, a reasonable officer should have known that the cell phone request was fishy, that the authorization to seize and search every electronic device in Griffith's house (to which he had just returned after prison) was overbroad, and that the justification for the search was circular.

electronic devices.  (Id. at 10–11.)  Courts within this Circuit concur, routinely recognizing an association between electronic devices and narcotics trafficking—such that electronic devices are essentially the "tools of the trade."[11]  Thus, unlike in Griffith, there was a likely connection between the suspected criminal activity and the electronic devices.

Beyond that, Coffey argues that the warrant request should have been framed more narrowly.  (See Def.'s Rep. Mem. at 4, ECF No. 59 ("There was no limitation on whose devices could be seized. . . .").)  But this asks too much; the circumstances here did not allow law enforcement to describe the electronic devices with any greater detail.  Demanding that an anticipatory search warrant specifically name each electronic item to be seized would require officers possessed of incomplete knowledge to identify ex ante every item of evidence that will be relevant and the precise form that it will take—a plainly unrealistic expectation.  Based on these facts, the warrant authorizing seizure of any electronic device found in 41 Sebonac Road— regardless of its registration—was not overbroad.

### b)   Probable Cause Existed to Believe the Triggering Conditions Would Occur.

The parties do not dispute that Judge Shields had probable cause to believe that the triggering conditions would occur.  See Grubbs, 547 U.S. at 96–97.

\*     \*     \*

---

[11]      See United States v. Delva, 13 F. Supp. 3d 269, 277 (S.D.N.Y. 2014) ("The association between narcotics trafficking . . . and cell phones has been long established—cell phones can store information and images relating to the crime and participants in the crime (that is, who bought and sold the drugs)."); see also United States v. Robinson, 2018 WL 5928120, at \*16 (E.D.N.Y. Nov. 13, 2018) (acknowledging the same association); United States v. Garcia, 2023 WL 4850553, at \*7 n.4 (D. Conn. Jul. 28, 2023) ("[T]he association between cell phones and narcotics trafficking is pervasive and long established, such that cell phones are essentially the 'tools of the trade.'"); United States v. Simmonds, 2014 WL 1706296, at \*8 (D. Vt. Apr. 29, 2014) (collecting cases supporting the proposition that "[c]ell phones are generally recognized as tools of the illegal drug dealing trade"), aff'd, 641 F. App'x 99 (2d Cir. 2016); United States v. Hammett, 555 F. App'x 108, 110 (2d Cir. 2014) (holding that cell phones are "tools that drug dealers often possess").

21

Accordingly, the Court concludes that "the 'totality of the circumstances' afforded [Judge Shields] 'a substantial basis' for making the requisite probable cause determination." Clark, 638 F.3d at 93 (quoting Gates, 462 U.S. at 238).

**B.    Coffey Does Not Create a Factual Dispute to Warrant a Hearing.**

In the alternative to an order suppressing evidence, Coffey requests the Court grant an evidentiary hearing on the Fourth Amendment issues raised.  (See Def.'s Mem. at 23, ECF No. 43.)  "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question." United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005) (internal quotation marks omitted).  But "if facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required." Gentile v. Cty. of Suffolk, 926 F.2d 142, 148 (2d Cir. 1991) (internal citation omitted).  "Ultimately, the decision to grant an evidentiary hearing is committed to the court's discretion." United States v. Hamilton, 487 F. Supp. 3d 140, 148 (E.D.N.Y. 2020).

Based on the above standards and the information provided in Special Agent Flynn's supporting affidavits, the Court concludes that Coffey has not alleged sufficiently definite disputed facts to warrant a hearing on his Fourth Amendment claim.

Coffey argues that the following disputed issues of fact warrant a hearing:

- Whether Coffey took possession of—and opened—the package after his grandmother accepted its delivery.  (Compare Gov't Opp'n at 8, ECF No. 47, with Def.'s Rep. Mem. at 6, ECF No. 59.)

- Whether the trip sensor's activation was delayed.  (Compare Gov't Opp'n at 8–9, ECF No. 47, with Def.'s Rep. Mem. at 6, ECF No. 59.)

- Whether Coffey "fled" the scene.  (Compare Gov't Opp'n at 8–9, ECF No. 47, with Def.'s Rep. Mem. at 6, ECF No. 59.)

22

- Whether the person who accepted the package (Coffey's grandmother) was ever a suspect.  (See Def.'s Rep. Mem. at 8, ECF No. 59.)

- Whether there was no suspect at home when the trip sensor went off.  (See Def.'s Rep. Mem. at 8, ECF No. 59.)

- Whether there was a suspect at 41 Sebonac Road when the package was opened.  (See Def.'s Rep. Mem. at 8, ECF No. 59.)

But as set forth above, these factual disputes are irrelevant to the probable cause determination. Probable cause existed upon the completion of the affidavit's triggering conditions, and critically, Coffey does not dispute that the triggering conditions occurred.  As a result, the facts Coffey urges "in support of a hearing would not entitle [him,] the moving party[,] to relief as a matter of law." Gentile, 926 F.2d at 148.  And so, "no evidentiary hearing is required."  Id.  Accordingly, the Court denies Coffey's request for an evidentiary hearing on the Fourth Amendment issues raised.[12]

### III.   CONCLUSION

For the reasons stated above, Coffey's motion to suppress is DENIED in its entirety, without need for a hearing.

**SO ORDERED.**

Dated:   December 26, 2023
          Central Islip, New York

                                        /s/ JMA
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE

---

[12]     As a result, the Court also denies Coffey's request "to expand the scope of the hearing on [his] Motion" for factual findings relating to the UPS employee opening the package at JFK.  (Def.'s Rep. Mem. at 10–12, ECF No. 59.)  For starters, the Court need not "expand the scope" of a hearing that Coffey is not entitled to.  In any event, Coffey admits that he "has not moved to suppress evidence from the search of the UPS package as unconstitutional."  (Id. at 10; see also Gov't Opp'n at 3–4, ECF No. 47.)  And so—again— the facts Coffey urges "in support of a hearing would not entitle [him,] the moving party[,] to relief as a matter of law."  Gentile, 926 F.2d at 148.  Therefore, "no evidentiary hearing is required."  Id.